May it please the Court, my name is Michael Zummer and I am representing myself. Regarding my claim against the FBI for injunctive relief, I believe this appeal presents the question of whether the Executive has absolute, unregal power over the constitutional rights of its employees through their security clearances. The merits of my First Amendment claim are not currently at issue. What is at issue is simply whether the courts have the jurisdiction to hear and review these constitutional questions. I believe that the Supreme Court's case in Webster v. Doe is controlling. In that case, when a CIA employee was fired for national security reasons, the Court concluded that a constitutional claim based on an individual discharge may be reviewed by the District Court. That's Webster v. 603 to 604. Thus, an individual discharge may be reviewed, not just policies regarding security clearances. I believe that the District Court in my case erred by relying on Department of Navy v. Egan because there was no constitutional claim at issue in Egan. What was at issue was whether or not the Merit Systems Protection Board, the MSPB, could The Supreme Court relied upon the Executive's national security power to outweigh a proposition of administrative law presuming appellate review of an administrative decision regarding a security clearance. So are you asking us to enlarge Bivens, that is, to recognize a new cause of action under Bivens? Yes, Your Honor, I am, and I'll turn to the Bivens issues. Because the Supreme Court has basically said we're not supposed to do that. Yes, Your Honor, I think that it is a highly disfavored activity, and I understand that Congress is definitely in a better position most of the time than the courts to make these decisions, but I believe in this limited case, the courts are in a better position. First of all, regarding the Count One claims, this was about a letter to a court about prosecutorial misconduct that affects the integrity of the courts, and then the defendants relied upon the deference that the courts have shown the Executive in national security matters in an effort to evade judicial review of their retaliation. And even if injunctive relief were or is available here, Your Honor, I really want to point out the abusive security clearance process that the FBI has, which differs from the other cases in Egan and El-Ghannaini. In Egan and El-Ghannaini, the employees actually continued to be paid while the security clearance decision was made, but in my case, the FBI immediately and indefinitely suspended me without pay once my security clearance was suspended. And then they also required me to abide by the FBI's outside employment rules. Those rules prevented me from being able to practice law, from being able to take a law enforcement job, and I had to get permission from them before I could take any job that was within their rules. When I got a job, had a job offer, they denied me permission even when there was no conflict of interest. And so what happens with this security clearance process is that the FBI executives, who attempt to prevent the release of information that is embarrassing to the FBI and Department of Justice, can use the security clearance process to cause an employee severe financial distress that the vast majority of employees can't withstand. And then if they get to court, the executive is simply going to argue national security and the courts can't review it. Most employees are not going to be able to withstand that, and it certainly caused me a severe amount of financial distress. And therefore, I think that to protect the First Amendment rights of FBI employees, there needs to be a Bivens action, an individual damages remedy, and the courts are in a better position than Congress because it directly impacts the courts, and they were relying on court precedent to abuse employees. These were not life and death, split-second decisions by agents on the street or by Border Patrol officers patrolling the border. These were FBI executives who had plenty of time to deliberate, plenty of time to collaborate, and plenty of time to seek legal advice. In fact, a few of them are lawyers. So furthermore, this is about a prior restraint of free speech. Both of them count. And the court is held in Elrod v. Burns. We did not cite it in our briefs, Your Honor, but I think that it's a, I think it's applicable here and it's a well-established principle that the loss of First Amendment freedoms for even minimal periods of time are unquestionably constitutes irreparable injury. That's Elrod v. Burns at 427 U.S. 347 at 373. Counsel, can I pause you for a second because I take it that you don't want us to review the merits of the FBI's security clearance decisions, right? You want our court or the district court to review the merits of your First Amendment claim. Am I understanding the position? I think that the, actually, I think that the First Amendment claim is pretty clear, Your Honor. And I understand your argument on it, but it strikes me there's two different issues. One is about whether there was First Amendment retaliation. The other is about whether and to what extent the FBI genuinely thinks that there's a national security reason for revoking the security clearance. And as to that second question, I take it you agree with your friend on the other side that you don't want us or the district court or any federal court to review that second question. No, Your Honor. I think that a court needs to decide that second question. Whether you're entitled to a security clearance? Yes, Your Honor. How do you square that with Egan, then, which seems to pretty clearly say that no court gets to review the merits of the FBI's security clearance decisions? Because, Your Honor, a constitutional right wasn't an issue in Egan. And in fact, what I would point the court to, U.S. Information Agency versus Kirch, which I think is persuasive here because in Kirch, the D.C. Circuit relied on both Egan and Webster. And the court held that the Foreign Service Grievance Board under Egan could not review the merits of a security question, dismissal for security reasons. But the court held that under Webster, the district court could review a constitutional equal protection claim. I'm sorry. I must have misunderstood the answer because that's exactly what I'm asking you. The way I understood the D.C. Circuit, this is not a hostile question. I'm just trying to understand the argument. What I understood the D.C. Circuit to do is to separate out two different questions. One is as to the merits of the security clearance decision, because you can imagine any number of things that would go into that sort of question that could be classified or national security sensitive or whatever, versus what courts normally do, which is to review constitutional claims under Webster. And so one is reviewable and the other is not. That's certainly what the D.C. Circuit said, and I thought that's what you're asking us to do. Actually, Your Honor, I don't—maybe I'm misunderstanding your question because I think that what the D.C. Circuit held was that the Foreign Service Grievance Board couldn't review it, but that the district court could review the merits of a security clearance claim involving an equal protection claim, a constitutional equal protection claim. But it's reviewing the constitutional claim, not the actual security clearance determination. It's a slight difference. It's—I think it's a distinction with—I think the end result is that there is unreviewable—absolute unreviewable power if the courts can't review the constitutional claim in order that the security clearance be reinstated. I guess what I'm wondering is if the thing that really—what I understand the thrust of your brief and argument to be is this is about First Amendment retaliation and I need review under Webster of my constitutional claims against the Bureau, couldn't the MSPB do that? Don't they normally do that under the CSRA? And it's a different jurisdictional avenue to get federal court review of the constitutional claim. Again, I'm trying to separate out—because every time you mush them together, you run into the tension between Webster and Egan. So if you tease them out and you separate the two different kinds of questions, one being national security, the other being First Amendment retaliation, it would strike me that one should be reviewable and without necessarily trotting on the other. I mean, couldn't you win an argument that said there was First Amendment retaliation here—maybe you can't do it under Bivens, but maybe you could do it under the CSRA—there was First Amendment retaliation. That doesn't necessarily entitle you to the remedy of reinstatement of the national security question. Do you see what I mean? I—first of all, I mean, I don't think that that was—I mean, the decision in Egan requires that, because in Egan the question was whether or not a security clearance determination—I mean, what they ultimately held was whether a security clearance determination was an adverse action under the CSRA, and therefore it didn't remove district court's ability to review and provide a remedy for a violation of constitutional rights using the security clearance process. But, I mean, you don't want us to order that you be issued a security clearance. Yes, Your Honor, I do. Well, so Bivens certainly doesn't entitle that, right? Bivens is about money damages and causes of action for constitutional claims, right? It doesn't—even if you win on all of your arguments, what I understood you to be saying is that you want a federal court to say that the Bureau violated your First Amendment rights and you're entitled, under Bivens you would be, to monetary relief, if we were to extend Bivens and do that, right? If that's—I mean, I—obviously, the—I think—first of all, I think that the issue here, their sole reason for suspending and revoking my security clearance was sending a letter to a judge that had nothing to do with national security. And ultimately, the people who made this determination about my constitutional rights was the FBI Security Division. You know, this is a matter for the courts. Whether or not my constitutional rights are violated, whether or not I had a right, frankly, their regulations that they claim I violated are—they're constitutionally is at issue here. And so, therefore, that is a question for the courts, and I think that's a question that the courts can provide a remedy, particularly when the—again, the Security Division's decision is solely, really, just a legal question. Regarding the Bivens action, I think that both are necessary here. I think it would be strange to have a Bivens action and not injunctive relief, because, frankly, I think that—I have to admit, I mean, I think a Bivens action would be a more—a more powerful measure in some ways, at least regarding the national security questions. And so, I think the injunctive relief, frankly, would be easier for the executive to handle, particularly since I'm only requesting to be returned to duty in Louisiana investigating public corruption. And I think here what's happened is that the executive has used national security, a clearance that I really didn't need in the course of my job duties, in order to retaliate against me, in order to force me out, and really to send a message to every other FBI employee not to, you know, not to disclose prosecutorial misconduct. And I think regarding the FBI's pre-publication review program, I think the Bivens action is necessary there as well, because, again, they're relying on—they're relying on a court precedent. The courts have decided that there is a presumption against the constitutionality of prior restraining speech. However, they are using that limited exception that the courts have allowed in order to conceal government wrongdoing from the public. And if they're allowed to censor that information, they haven't provided me the safeguards that are provided under Southeastern Promotions. In fact, the Supreme Court in SNEP versus the United States addressed the issue. I think 444 U.S. at 513 footnote 8, where they discussed the CIA's pre-publication review policy, and that the agency is required to institute proceedings. Well, the FBI requires employees, when they censor or refuse to review unclassified information for release, requires the employee to go to court in violation of Supreme Court safeguards. By doing that, they can prevent—they can prevent the release of allegations of government wrongdoing from the public for years. And also, I'd like to point out, Your Honor, that the Al-Qanani, I think, versus U.S. Department of Energy, point out at 591 F3rd at 185 footnote 5, that the Third Circuit—the Third Circuit specifically wrote that we need not and do not decide what would happen if a clearance was revoked for a criterion that appeared constitutionally suspect, such as Al-Qanani's religion. Well, the reason here is constitutionally suspect. I never—I would—I'm an Iraq War veteran. I would not do anything to threaten the interests—the national security interests of the United States. And for them to claim that I would, simply because I sent a letter to a judge disclosing prosecutorial misconduct, where I believe that victims of a sexual predator district attorney were not—their interests were not served properly by the U.S. Attorney's Office for the Eastern District of Louisiana. And that makes me a threat to national security, that somehow I'm going to provide national security information to the Chinese or the Russians, is ridiculous. And the importance of protecting the First Amendment rights of FBI employees isn't just about—isn't just about FBI employees. It's about the public and about protecting the public from wrongdoing by the FBI and DOJ. And here, it's particularly important in cases involving sexual predators, sexual predators who may have influence within the DOJ or FBI. Here the women who were victimized by Harry Morel were not only abused by a sexual predator district attorney, they were also abused by the U.S. Attorney's Office for the Eastern District of Louisiana. And therefore, I think that this court needs to provide a remedy, not just an injunctive relief, but Bivens actions, in order to allow FBI employees to disclose to the public and to the courts whether or not there's prosecutorial misconduct. Have the women since gotten—has that all been exposed and taken care of? As far as I— Prosecutions of the district attorney, etc.? Is that in the record? Oh, it's in my letter, Your Honor, yes. Right, but since then, have—okay, maybe it's not. I'm asking whether there's any—there's been any relief. No, Your Honor, no. All right, you've saved time for about a minute. Thank you, Your Honor. Counsel? Is that in the record? Have there been relief for these alleged sexual abuse people? It's not in the record, Your Honor. Go ahead and remove your mask, if you will. I'd prefer to leave it on if— We would prefer that you remove it. Thank you. Pardon? We would prefer that you remove it. Thank you. Good morning, Your Honors. May it please the Court. I'm Josh Koppel on behalf of the United States. I want to start by clarifying, with regards to Judge Oldham's question during Mr. Zummer's argument, there is no way to separate adjudication of the First Amendment retaliation claim from reviewing the FBI's determination that Mr. Zummer was not entitled to a security clearance. Under Pickering v. Board of Education, to resolve the First Amendment retaliation claim, a court would need to balance Mr. Zummer's interest in his speech in sending the letters to Judge Englehardt against the government's interest in promoting the effective and efficient fulfillment of its responsibilities here, protecting access and protecting the security  Was there something classified in the letter? There was not, but there certainly is no need for the government to wait for an individual to release classified information to determine that he presents a security risk. Did he have classified information? Did he have classified information? I don't know if he ever had access to classified information. That's not in the record. It seems what was in the letter was not classified, and it's very possible that this case did not involve classified information. But his job didn't involve classified information. Nothing about his work ever exposed him to classified information, did it? I don't know. It's not in the record whether his job ever involved classified information. And certainly if he wanted to bring a challenge to the FBI's requirement that all FBI agents hold security clearances, that is something that Egan says he can raise in the MSPB. But that's not the challenge that he's brought here. Can I ask a little? The injection of the security clearance complicates this case, and so I want to try to walk step by step and make sure I understand the government's position. Suppose instead of revoking a security clearance, the Federal Bureau of Investigation just said, Mr. Zummer, we didn't want you to send the letter to Judge Inglehart, and you are therefore fired for insubordination. That's a cognizable—and he says, okay, that's First Amendment retaliation. That would be cognizable, right? That's correct. So why does it change when the FBI just takes an otherwise cognizable First Amendment claim and just says, whoops, national security. This is all wrapped up inside of your security clearance. There are numerous personnel actions at the FBI that don't involve security clearances. And in fact, the vast majority of cases challenging FBI personnel actions don't involve security clearances. But where the FBI further determines that an individual's actions or upon some reevaluation of that individual, the FBI determines that granting the individual access to classified information isn't clearly consistent with the national security, that makes this an Egan case. Why can't the FBI just take literally every personnel decision it makes, literally every one, and wrap it up in a national security determination, make them all judicially unreviewable in your view? Literally all of them. The administrative assistants have access to files. The janitorial staff has access to the building. Every single employee in the J. Edgar Hoover building and every field office across the country has access to sensitive FBI information. So every hiring, firing, promotion, failure to hire, failure to promote, demotion, every case, it all implicates national security and therefore is not unreviewable. Again, there's certainly no evidence that the FBI launders regular personnel decisions through the security clearance process. And the court has recognized, the court recognized in Perez v. FBI, that Egan does create a potential for abuse and the executive branch takes that very seriously. But your rule would allow it. The rule you've asked for in your briefing would allow exactly what we just discussed. The political question doctrine, Egan, you know, do create this opportunity for abuse and as the court recognized in Perez, the executive branch bears a heavy responsibility. The attorney general, the director of the FBI, the office of the inspector general bear a heavy responsibility to ensure that the constitutional rights of FBI employees are not trampled. And in fact, the FBI and the executive branch take that responsibility quite seriously. And that's exactly why, you know, there's no evidence that, of this kind of, you know, systemic abuse. Well, his argument is in this case you didn't take it seriously because in this case you're using a totally pretextual justification. The letter didn't have any classified information in it. There's no evidence. He had access to classified information. And so it's just bootstrapping for the purpose of evading judicial review. The FBI security division determined that Mr. Zummer's disclosure of confidential, sensitive, privileged information against the directions of his supervisors in violation of his contractual commitments raised a real question about his ability or willingness to safeguard classified information. That is a, you know, that was certainly a reasonable determination. The FBI doesn't need to wait for an individual to disclose classified information. If he didn't have any classified information, it seems that it's just a punishment. Not at all, you know. I don't know if we can review it, but it seems like it's just a punishment that he was insubordinate. And so, you know, I can understand if you don't trust people with sensitive documents, but if he doesn't have sensitive documents, then you remove that part of his job, even though he doesn't do that part of his job. And it just seems like he's being punished for being insubordinate and embarrassing the department. That's certainly an argument that could be made. Your Honor, the action that the FBI took was to revoke his security clearance, which is Now, this further question of whether Mr. Zummer could continue in his job without a security clearance, that's a separate question. It's not before this Court. Pardon? I don't think I suggested one way or the other whether that was appropriate. Okay. Well, in any event, you know, the FBI determined that he couldn't be trusted with classified information, and they revoked the security clearance. The question of whether that should lead to his termination is a separate question that Egan recognized can be brought in the MSPB, and that Mr. Zummer has not asserted in this case that he should have been entitled to keep his job even without the security clearance. Is any of that going on now? Is he pursuing any kind of whistleblower thing in that process? Mr. Zummer also reported his complaints to the Office of the Inspector General, which pursued an investigation and wrote a report. He also has a pending appeal in front of the Access Review Committee, an appeal of the revocation of his security clearance. Is the report in the record? The IG report, is that in the record? It is. I want to understand, I was troubled by the government's understanding of the political question doctrine, and I want to understand exactly what the limits are, if there are any. Is it your view that the FBI could say, and not on a class-wide basis, maybe just in like We have determined that all agents who are black or a woman or in a same-sex relationship pose a national security risk, and therefore we're revoking your security clearances, and that would be insulated by the political question doctrine? I think it is a separate question whether the FBI could create some kind of policy like that. It's a question this court doesn't need to answer. What if it did it for one individual? What if it just said, look, I've looked at you individually, and I've determined that because you are a woman or you are black or whatever, some protected class, I, the director of the FBI, have determined that you're a national security risk, and therefore I'm revoking your security clearance, and sorry, but that's completely judicially unreviewable by anyone. MSPB, district court, Fifth Circuit, Federal Circuit, all are unreviewable. Under Egan, that claim is non-justiciable. Really? Yes, Your Honor. Even though it involves a bedrock core constitutional right, and even though Webster comes along and says that someone has to be able to review the claim of constitutional discrimination, the position of the United States government is that that hypothetical is totally non-reviewable. Yes, Your Honor. Egan, as the Supreme Court explained in Egan, the determination that in a particular individual, the granting of a particular individual a security clearance is not clearly consistent with the national security is a determination entrusted by the Constitution. There's a, I'm sorry, there's a textually demonstrable commitment of that issue to the executive branch, and there is no judicially discoverable or manageable standard for evaluating that claim. Even with the practice of invidious discrimination, that's a political question. That's the hypo, am I right? Yes, Your Honor. In Gilligan v. Morgan, for example, the Supreme Court held that claims of constitutional violations by the Ohio National Guard were non-justiciable because resolving the claims would have required a court to inquire into the training and weaponry and orders of the Ohio National Guard. And see, I don't get this at all. This doesn't make any sense to me at all, because under the hypo I just gave you, a federal court wouldn't have to evaluate the national security question at all. It could literally just look at the decision that the FBI made in this hypothetical and say, well, the reason you gave, right, you connected race or sex or whatever, some protected class to this decision, that's unconstitutional. And so that doesn't order the reinstatement of the security clearance, it just determines that the action that the United States took is unconstitutional. And I don't see why that would trigger Egan or tread on national security in any way. Resolving that claim would require a court to determine whether the FBI had a legitimate interest or reached a reasonable conclusion in determining that granting the individual security clearance was not clearly consistent with national security. So to take a First Amendment claim as we have here, an individual could pledge allegiance to Al-Qaeda, that would certainly be First Amendment protected activity. An individual could express sympathy for America's adversaries or join an organization committed to overthrowing the United States government, that's certainly First Amendment protected activity. But it's also certainly legitimate for the FBI to consider that conduct in determining that the individual should not be granted a security clearance. And so it's not enough to simply say that the FBI made its decision here on the basis or in consideration of Mr. Zummer's speech. But as I understand your position, you think the United States government thinks that the political question doctrine insulates literally every decision, no matter what constitutional violation, even the most sacrosanct from judicial review, if they just call it national security. Where the political question doctrine applies, it renders claims non-justiciable, even if those claims assert blatant violations of the Constitution. That is certainly the political question doctrine, Your Honor. And I do want to distinguish Webster v. Doe because you raised it. Webster v. Doe was a question about, in that case, the CIA director had terminated a CIA employee under the auspices of the National Security Act because he determined that the employee's employment was not consistent with the interests of the United States. The court in Webster was construing the National Security Act and determining whether Congress had intended to foreclose review of constitutional claims. But it's critical that the director there was acting pursuant to his statutory authority, not to his constitutional authority. Here, in contrast, as the Supreme Court in Egan explained, where an executive branch denies or revokes a security clearance, it's acting pursuant to the president's authority as commander-in-chief of the Army and Navy. And, you know, no court, to be clear, no court has held that Webster permits a court to review the executive branch's determination that a particular individual should not be granted a security clearance. And, in fact, Al-Ghannaini, the third circuit, is the only court to have considered the question in Al-Ghannaini. And Al-Ghannaini held that a First Amendment retaliation claim, similar to the one brought here, must be dismissed under Egan. Mr. Zummer attempts to distinguish Al-Ghannaini as well as this court's decision in Perez and similar cases on the grounds that those cases involve supposed real concerns about the plaintiff's ability to protect classified information. And this case does not. But that assumes the merits of Mr. Zummer's claim. It says nothing about justiciability. And in any event, it's wrong. The FBI Security Division's division… Don't we do that sometimes? We peek through to the merits to help us with justiciability? That's not unheard of is the way we analyze. We peek through for justiciability. The political question doctrine requires the court to determine how it would resolve a claim and what issues it would need to resolve. So here, to resolve the First Amendment retaliation claim, for example, the court would need to evaluate and second-guess, really, the FBI's determination that Mr. Zummer should not be granted a security clearance. But the political question doctrine doesn't permit the court to look through to determine whether the FBI determination was, in fact, reasonable. And as the Supreme Court explained in Egan, an outside, non-expert body can't even properly assess the correct margin of error in evaluating the national security risk of granting a security clearance. What if you're not assessing the national security? What if you're assessing the bona fides of the alleged determination? You're looking for documents that say, we're going to get this guy. Ha, ha, ha. We figured out a way. And it's not really at all about national security. So there is no national security determination that it's all a trumped-up thing. Can you look through that? Can you do that? No, Your Honor. The FBI's letter to Mr. Zummer revoking his security clearance states, explains that the way that he handled confidential, sensitive, privileged information raised a real question about his ability to protect classified information. And the court can't second-guess. But can you look to the sincerity of that? Whether the FBI itself actually believes that? No, Your Honor. The court cannot second-guess that. Just as Egan didn't permit the MSPB to take a quick look or determine the Department of Navy's motives in denying a security clearance in that case. The political question doctrine prohibits all review, all second-guessing, any second-guessing of the executive branch's determination that Mr. Zummer was not entitled to security clearance. Under the Baker v. Carr factors, the Constitution contains a textually demonstrable commitment of authority to the executive branch in this area, and there are no judicially discoverable and manageable standards for reviewing the executive branch's determination. The determination of experts in national security that granting Mr. Zummer security clearance would not be clearly consistent with the interests of national security. And, you know, in fact, in Perez v. FBI, this court dismissed a Title VII claim alleging that the FBI's revocation of a security clearance was motivated by discriminatory factors. And there's no reason to think that the upshot of this court's decision in Perez is that although a plaintiff's Title VII challenge to the revocation of a security clearance is non-justiciable, he can obtain judicial review simply by amending his complaint to replead the same claim as an equal protection claim. And, you know, not only, of course, is that true about Perez, but every other court of appeals to have considered the issue has held that claims such as that are non-justiciable. Unless the court has further questions, you know, I'll ask that the court affirm the decision of the district court. All right. Thank you, Mr. Coughlin. Mr. Zummer, you save some time for rebuttal. Just a few points. First of all, the reference to the Access Review Committee of the Department of Justice. Today is the very first time that I've heard from the Department of Justice that I have an appeal pending there. I submitted my appeal two years ago, and today is the first time I've even had any acknowledgement of its existence. As far as the – I think it's important to look at the way this letter was handled, because I didn't just simply refuse to follow the FBI's rules and regulations. I asked for permission, was not given permission. I sent it to FBI pre-publication review, and FBI pre-publication review refused to review it under claiming that I had – that such a disclosure would be in the performance of my official duties, when in fact I had no permission in the performance of my official duties. And I believe that decision was in violation of Supreme Court precedent in Lane v. Franks. And thus, I believed at that point my free speech rights had been violated, and I sent the letter anyway. Mr. Zummer, do you have any – or have you in the past pursued any remedies in either the MSPB or the FBI's Equal Employment Opportunity Office, the two ways that the CSRA contemplates for claims that are governed by the CSRA?  No, Your Honor, because the MSPB, to me, it's always been very clear it's not an adverse action, and therefore the MSPB can't review it. And that's – actually, they have laundered this action through national security to evade judicial review, because as a veteran, I would have been entitled to review with the CSRA or through the MSPB. And by doing this, they could prevent review. And I think it's also important to point out that the FBI's own inspection division, which is responsible for determining whether or not rules and regulations have been violated, didn't take action against me and determined that I was a whistleblower. Also, the Ninth Circuit and Dubs and the D.C. Circuit and Kirch have held that a security clearance issue regarding a constitutional claim can be reviewed. And as far as I know, I believe John Kirch ended up getting his job back with the Foreign Service and ultimately retired. So I don't understand where this is coming from to say that no court has ever allowed this to be reviewed. As far as the information that was provided to Judge Engelhardt, courts review that sort of information all the time. And whether it's privileged, whether the evidence is admissible, whether the privilege is legitimate or not is something that judges determine whether under the Federal Rules of Evidence as well as under FOIA requests. So to me, I didn't think there was any damage to be done by providing that information to a federal judge. As far as the pledging allegiance to Al-Qaeda concept, that obviously could be reviewed in a Pickering analysis. I think that's very clear that that would be an adequate justification not to allow someone to have a security clearance. And regarding Webster, Justice O'Connor raised the issue of the executive's national security power in her dissent. And the majority rejected it. And I believe that's because of Justice Jackson's concurrence from Youngstown showing that the CIA director was actually acting at his maximum authority when he had congressional approval as well as the executive's power. With that, I would just request that the district court's dismissal of my claims be reversed. All right. Thank you, Mr. Sumner. Your case and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow. Thank you. Thank you.